RECORD NUMBER: 12-7419

# United States Court of Appeals

### *for the*

# Fourth Circuit

**UNITED STATES OF AMERICA,**

*Appellee,*

– v. –

**THOMAS BLACKLEDGE,**

*Appellant.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA at RALEIGH**

# OPENING BRIEF OF APPELLANT

**RICHARD CROUTHARMEL**
**ATTORNEY AT LAW**
**303-200 Blake Street**
**Suite 211**
**Raleigh, North Carolina 27601**
**(919) 755-1113**

*Counsel for Appellant*

**CP** COUNSEL PRESS • VA – (800) 275-0668

# TABLE OF CONTENTS

Table of Authorities ......................................................................... ii

Statement of Subject Matter and Appellate Jurisdiction ................................ 1

Statement of the Issue ..................................................................... 1

Statement of the Case ...................................................................... 2

Statement of the Facts ..................................................................... 3

Argument .................................................................................. 12

I.     THE DISTRICT COURT CLEARLY ERRED IN FINDING
       THAT BLACKLEDGE'S ATTORNEY HAD NOT
       ABANDONED HIM AND IT ABUSED ITS DISCRETION BY
       FAILING TO EQUITABLY TOLL THE DISCOVERY PERIOD
       DEADLINE TO ALLOW BLACKLEDGE TO SEEK THE
       APPOINTMENT OF AN ADDITIONAL EXPERT FORENSIC
       EXAMINER WHO COULD PROVIDE HIM FAVORABLE
       TESTIMONY AT HIS CIVIL COMMITMENT HEARING ........... 12

              Summary of the Argument ...................................... 12

              Standard of Review ............................................ 13

              Discussion ..................................................... 13

              Conclusion .................................................... 19

II.    THE DISTRICT COURT ABUSED ITS DISCRETION BY
       FAILING TO ALLOW BLACKLEDGE'S TRIAL ATTORNEY
       TO WITHDRAW AFTER SHE DEMONSTRATED A
       SIGNIFICANT CONFLICT OF INTEREST THAT RENDERED
       HER LOYALTY TO BLACKLEDGE UNCLEAR. ........................ 19

              Summary of Argument .......................................... 19

              Standard of Review ............................................ 20

i

Discussion ................................................................ 21

Conclusion ............................................................... 27

III. THE DISTRICT COURT ABUSED ITS DISCRETION
   AND/OR REVERSIBLY ERRRED BY REFUSING TO
   GRANT BLACKLEDGE'S MOTION FOR AN ADDITIONAL
   EXPERT FORENSIC EXAMINER IN HIS CIVIL
   COMMITMENT HEARING BECAUSE IT USED AN
   ERRONEOUS LEGAL STANDARD IN MAKING ITS
   DECISION. ........................................................... 28

   Summary of Argument ............................................ 28

   Standard of Review ................................................ 28

   Discussion ........................................................... 29

Conclusion ................................................................ 35

# TABLE OF AUTHORITITES

**Cases**

*Anderson v. Bessemer City*,
  470 U.S. 564, 84 L. Ed. 2d 518, 105 S. Ct. 1504 (1985) .................. 13

*Anderson v. Yungkau*,
  329 U.S. 482, 67 S. Ct. 428, 91 L. Ed. 436 (1947) .......................... 26

*Beery v. Ault*,
  312 F.3d 948 (8th Cir. 2002) ........................................... 16

*Brown v. Nucor Corp.*,
  576 F.3d 149 (4th Cir. 2009) ........................................... 14

*Cuyler v. Sullivan*,
  446 U.S. 335, 100 S. Ct. 1708, 64 L. Ed. 2d 333 (1980) ............. 23, 25

*Fisher v. Johnson*,
  174 F.3d 710 (5th Cir. 1999) ........................................... 13

*Glasser v. United States*,
  315 U.S. 60, 62 S. Ct. 457, 86 L. Ed. 680 (1942). ........................... 23

*Griffin v. Illinois*,
  351 U.S. 12, 76 S. Ct. 585, 100 L. Ed. 891 (1956) .......................... 33

*Harman v. Apfel*,
  211 F.3d 1172 (9th Cir. 2000) ........................................... 29

*Harris v. Hutchinson*,
  209 F.3d 325 (4th Cir. 2000) ................................... 13, 16, 19

*Heath v. U.S. Parole Comm'n*,
  788 F.2d 85 (2d Cir. 1986) ........................................... 23

*Holland v. Florida*,
  560 U. S. ___, 130 S. Ct. 2549, 177 L. Ed. 2d 130 (2010). ......... 16, 19

*Jacobs v. United States*,
    350 F.2d 571 (4th Cir. 1965) ...................................................... 30, 32

*Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach*,
    523 U.S. 26, 118 S. Ct. 956, 140 L. Ed. 2d 62 (1998) ...................... 26

*Maples v. Thomas*,
    ___ U.S. ___, 132 S. Ct. 912, 181 L. Ed. 2d 807 (2012) ........... passim

*Strickland v. Washington*,
    466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) .................. 22

*United States v. Barcelon*,
    833 F.2d 894 (10th Cir. 1987) ........................................................ 23

*United States v. Comstock*,
    627 F.3d 513 (4th Cir. 2010) .......................................................... 33

*United States v. Corporan-Cuevas,*
    35 F.3d 953 (4th Cir. 1994) ............................................................ 20

*United States v. Hall*,
    664 F.3d 456 (4th Cir. 2012) .......................................................... 31

*United States v. Hartsell*,
    127 F.3d 343 (4th Cir. 1997) .......................................................... 28

*United States v. Johnson*,
    617 F.3d 286 (4th Cir. 2010) ............................................... 14, 21, 29

*United States v. Stevenson*,
    396 F.3d 538 (4th Cir. 2005) .......................................................... 13

*United States v. Tatum*,
    943 F.2d 370 (4th Cir. 1991) .......................................................... 22

*United States v. Timms*,
    664 F.3d 436 (4th Cir. 2012) ............................................................ 1

iv

*Williams v. Martin*,
 618 F.2d 1021 (4th Cir. 1980) ...................................................... 29, 31

*Wood v. Georgia*,
 450 U.S. 261, 101 S. Ct. 1097, 67 L. Ed. 2d 220 (1981) ................... 21

## **Rules, Statutes, and Other Authorities**

18 U.S.C. § 3006A ............................................................... 21, 23, 26

18 U.S.C. § 4247 ............................................................................ 26

18 U.S.C. § 4247(a)(5) ................................................................... 33

18 U.S.C. § 4247(a)(6) ............................................................... 33, 34

18 U.S.C. § 4247(d) ......................................................... 21, 23, 26

18 U.S.C. § 4248 .............................................................................. 1

18 U.S.C. § 4248(a) .......................................................................... 2

18 U.S.C. § 4248(c). ....................................................................... 21

28 U.S.C. § 1291 .............................................................................. 1

## STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

The district court had jurisdiction under 18 U.S.C. § 4248. This Court has jurisdiction under 28 U.S.C. § 1291. *United States v. Timms*, 664 F.3d 436, 444 (4th Cir. 2012).

## STATEMENT OF THE ISSUE

1.  Did the district court clearly err in finding that Blackledge's attorney had not abandoned him and did it abuse its discretion by failing to equitably toll the discovery period deadline to allow Blackledge to seek the appointment of an additional expert forensic examiner who could provide him favorable testimony at his civil commitment hearing?

2.  Did the district court abuse its discretion by failing to allow Blackledge's trial attorney to withdraw after she demonstrated a significant conflict of interest that rendered her loyalty to Blackledge unclear?

3.  Did the district court abuse its discretion and/or reversibly err by refusing to grant Blackledge's motion for an additional expert forensic examiner in his civil commitment hearing because it used an erroneous standard in making its decision?

## STATEMENT OF THE CASE

On 15 September 2009 the Government for the United States of America ("the Government") filed a "Certification of a Sexually Dangerous Person" pursuant to 18 U.S.C. § 4248(a) (also known and sometimes hereinafter referred to as "the Adam Walsh Act") against Thomas Blackledge ("Blackledge") in the United States District Court for the Eastern District of North Carolina ("the district court") (JA pp 12-17).  On 1 June 2010 the district court ordered the local Federal Public Defender's Office to provide representation for Blackledge (JA p 3, DE 2). On 24 June 2010 Blackledge filed a Motion to Dismiss and Release (JA p 18-21). After Blackledge's unsuccessful challenge to the constitutionality of the Adam Walsh Act, the district court denied Blackledge's motion to dismiss and release on 18 January 2011 (JA pp 22).  Blackledge requested a bench trial on 28 January 2011 (JA p 4, DE 9).

On 2 August 2012 the district court conducted a bench trial on the issue of Blackledge's status as a sexually dangerous person under the Adam Walsh Act (JA pp 146-246).  On 10 August 2012 the district court concluded that Blackledge was a sexually dangerous person as defined by the Adam Walsh Act and ordered that he be civilly committed to the custody of the United States Attorney General (JA pp 247-99, 300-02).  Blackledge filed notice of appeal on 21 August 2012  (JA pp 303-04).

## STATEMENT OF THE FACTS

On 11 March 2011 an attorney from the Federal Public Defender's Office named Sonya Allen ("Attorney Allen") filed a notice of appearance on behalf of Blackledge (JA pp 4, DE 11). On 27 July 2011 Attorney Allen filed a motion for the appointment of an expert forensic examiner named Dr. Terrence Campbell ("Dr. Campbell") and the district court granted the motion (JA p 4, DE 18-19). Dr. Campbell examined Blackledge on 31 August 2011 and Attorney Allen filed his report on 7 October 2011 (JA pp 401-35). Dr. Campbell diagnosed Blackledge with pedophilia and ultimately opined that Blackledge was a sexually dangerous person as defined in the Adam Walsh Act (JA pp 408-09, 435).

On 11 October 2011 Attorney Allen filed a motion for appointment of a second expert forensic examiner for Blackledge, this time an expert named Dr. Joseph Plaud ("Dr. Plaud") (JA pp 23-63). Attorney Allen also requested an extension of time to complete discovery (JA pp 64-66). The Government filed a response indicating it did not oppose the motions but further requesting that Dr. Plaud not be paid with Department of Justice funds (JA pp 67-69). On 4 November 2011 the district court orally denied Blackledge's motion without prejudice (JA p 5, DE 30). The district court found that Blackledge had failed to show any need for the appointment of Dr. Plaud but directed that Blackledge could renew his motion and provide the appropriate information showing Dr. Plaud's

3

evaluation was necessary (JA p 5, DE 30).  The district court subsequently
extended the discovery period to 22 December 2011 (JA pp 6, DE 34).  On 28
March 2012 the district court designated 14 June 2012 as the bench trial date on
the issue of Blackledge's sexual dangerousness (JA p 6, DE 39).

After the district court's 4 November 2011 denial of Blackledge's motion for
Dr. Plaud's appointment, neither Attorney Allen nor anyone else from the Federal
Public Defender's office filed any pleadings on behalf of Blackledge until 17 April
2012 when Attorneys Katherine Shea ("Attorney Shea") and Debra Graves
("Attorney Graves") filed notices of appearance (JA pp 70-71).  Attorney Shea
subsequently noted that she and Attorney Graves were "second and third chairs" to
Attorney Allen (JA p 72, #5).  On 16 May 2012 Attorney Shea filed a motion to
continue the bench trial (JA pp 72-74).  On 17 May 2012 the district court granted
that motion and re-set the bench trial for 2 August 2012 (JA p 75).

On 14 June 2012 Attorney Allen filed a sealed motion renewing
Blackledge's request for appointment of Dr. Plaud as an additional expert forensic
examiner (JA pp 305-08).  This time the Government opposed the request (JA pp
76-79).  On 2 July 2012 the district court denied Blackledge's request finding that
Blackledge had again failed to show good cause for Dr. Plaud's appointment and
further noting that the request would disrupt the scheduling order (JA pp 312-15).

Attorney Allen's Motion to Withdraw

On 10 July 2012 Attorney Allen, citing an unnamed internal ethical conflict, filed a motion to withdraw as Blackledge's attorney (JA pp 80-81). The Government opposed the motion (JA pp 82-85). Attorney Allen filed a response and noted that Blackledge had requested new counsel (JA pp 86-87). On 18 July 2012 the magistrate judge conducted a hearing on Attorney Allen's motion to withdraw (JA pp 88-117). Attorney Allen said that Blackledge had requested things of her that she could not provide (JA p 91). Blackledge said that he had requested and not received from Attorney Allen certain unnamed documents (JA pp 93-95). Blackledge further said that for the last six to eight months he felt like Attorney Allen was ignoring him, that he had lost confidence in her, and that as a result of this it was very difficult for him to now communicate with her (JA pp 96-97). Blackledge said that Attorney Allen did not even discuss with him her motion to withdraw (JA pp 97-98). Attorney Allen responded by saying that a death in the family had taken her out of town and had precluded her from discussing her motion to withdraw with Blackledge (JA pp 97-98). Attorney Allen also noted that a Criminal Justice Act ("CJA") panel attorney was ready to take her place and that he was an experienced Adam Walsh Act attorney who could come up to speed quickly (JA pp 98-99). Attorney Allen said that she would have great difficulty in zealously representing Blackledge if the magistrate judge denied her motion (JA p

5

101).  The magistrate judge explored fixes for the relationship but Attorney Allen said she believed it was beyond repair (JA p 101).

Blackledge asserted that his defense was mishandled and that he was now defending himself with one hand tied behind his back and that the playing field was no longer level (JA p 106).  The magistrate judge tried to get Blackledge to agree that he was simply dissatisfied with the district court's prior rulings and not Attorney Allen's performance but Blackledge declined to admit this (JA p 106).  Instead, Blackledge said that he had believed all along that Attorney Allen was going to procure a second expert forensic examiner for him and she failed to do so (JA p 107).  Blackledge said that he had patiently waited for a second expert forensic examiner to come see him but one never appeared (JA p 107).  The magistrate judge told Blackledge that his motions failed to show that a second expert forensic examiner would produce a different result (JA p 107).  Attorney Graves then said that Dr. Plaud had preliminarily indicated he could provide favorable testimony for Blackledge (JA p 107).

Attorney Allen then said that she had not immediately renewed her motion for Dr. Plaud's appointment because she was under the impression that she had more time to do so (JA p 108).  She said that was the main reason for her motion to withdraw but it was not the only reason (JA pp 108-09).  She further remarked that Blackledge was mistaken when he said he had one hand tied behind his back

6

because he, in fact, had both hands tied behind his back without an expert to testify on his behalf (JA p 109). Attorney Allen said that Dr. Plaud had not unequivocally said he would find that Blackledge did not meet the Adam Walsh Act criteria but that he would look at it and that it was possible he might so conclude (JA p 109).

The magistrate judge briefly considered an *ex parte* communication with Blackledge to fully flesh out the problem but Blackledge said he had adequately conveyed the nature of the problem in open court (JA p 111). The magistrate judge took a brief recess and then denied Attorney Allen's motion to withdraw (JA pp 111-12). The magistrate judge noted that the motion was not timely (JA p 112). The magistrate judge also gave weight to the fact that a bench trial date had been set and that the Government had arranged for its witnesses to testify on that date (JA p 113).

On 23 July 2012 Attorney Allen gave notice of appeal to the district court of the magistrate judge's order denying her motion to withdraw (JA pp 118-22). On 24 July 2012 Attorney Shea filed a notice of her withdrawal as counsel for Blackledge (JA p 8, DE 60). On 30 July 2012 Attorney Allen filed a second motion to withdraw as Blackledge's attorney (JA pp 130-32). This time she asserted that Blackledge had filed a bar complaint against her and this had caused the attorney-client relationship to deteriorate to the point that she could no longer

represent him (JA p 130).  She also reasserted her unnamed internal ethical conflict
(JA p 130).

The district court began the bench trial on 2 August 2012 (JA p 146).  The
district court first entertained Attorney Allen's argument on her appeal of the
magistrate judge's order denying her motion to withdraw and her second motion to
withdraw (JA pp 148-64).  Attorney Allen's and Blackledge's arguments were
very similar to their previous arguments to the magistrate judge (JA pp 148-52).
However, Attorney Allen also argued that her failure to secure an additional
forensic examiner for Blackledge had created a significant conflict of interest
warranting her withdrawal (JA p 157).

The district court judge pointed out to Blackledge that allowing Attorney
Allen to withdraw would not necessarily result in his being appointed another
attorney (JA p 152).  The district court judge asked Blackledge if he would prefer
Attorney Allen or to proceed *pro se* (JA p 152).  Blackledge said he would choose
Attorney Allen if given a choice (JA p 152).  In the end, the district court judge
denied the appeal and the second motion to withdraw (JA p 162).  Attorney Allen
then made a motion to bifurcate and asked that Blackledge be allowed to present
his evidence at a later date (JA p 162).  The district court denied that request (JA p
164).

The Government presented its case through three expert witnesses:  Dr. Christopher North, Dr. Campbell, and Dr. Tonya Cunic (JA pp 166, 205, 382-400). Dr. North and Dr. Campbell testified at the bench trial while Dr. Cunic merely submitted a written report (JA pp 166, 205, 382-400).  Blackledge did not object to any of them being qualified as experts.  All three experts opined that Blackledge met the Adam Walsh Act criteria (JA p 172, 210, 388-89).

The evidence showed that on 28 March 1960, at the age of 15, Blackledge received a life sentence in Wyoming for first-degree murder (JA pp 250-51). Blackledge had bludgeoned a 15-year old girl to death with a hammer for refusing his sexual advances (JA p 251).  He served eight years in the Wyoming State Prison and was released at age 23 (JA p 251).  On 22 October 1986 in the United States District Court for the District of Colorado Blackledge was sentenced to 12 years of prison and five years of probation for one count of mailing child pornography and 15 counts of using children to create child pornography (JA pp 251-52).  Blackledge and two co-defendants had used a three-year-old girl and a two-year-old boy to create sexually explicit photos (JA pp 252-53).  In November and December 1986 two separate Colorado counties convicted Blackledge for the same conduct that had led to his federal child pornography conviction (JA pp 254-55).  The Colorado state courts ran Blackledge's state sentences concurrent to his federal time (JA p 255).

While incarcerated and/or in treatment, Blackledge self-reported several unprosecuted incidents of child molestation, although, it is unclear when the last such incident occurred (JA pp 256-58).  In 1993 Blackledge was released from the Bureau of Prisons and transferred to the Colorado State Prison where he remained until 2003 (JA p 259-60).  On 27 April 2005 the United States District Court for the District of Colorado sentenced Blackledge to six years of imprisonment for violating probation (JA p 255).  Blackledge was found to be in possession of child pornography on his home computer (JA p 255).

During the bench trial Blackledge, through cross-examination of witnesses, attacked the third element of the Adam Walsh Act:  that he would have serious difficulty refraining from sexually violent conduct if released (JA pp 197-204, 222-29).  Dr. North admitted that the record evidence did not affirmatively address Blackledge's volitional control, his sex drive may have diminished since his last psychiatric evaluation, and that he had no sexually-related disciplinary reports during incarceration (JA pp 200-02).  Dr. Campbell admitted that Blackledge was at much greater risk to commit non-contact offenses than contact offenses, an impulsivity test showed that he was not generally impulsive, he had committed no contact offenses after his release from prison in 2003, and he had no sexual misconduct issues since 2006 (JA pp 223, 225, 229, 231).  In closing, Attorney Allen argued that viewing and possessing child pornography was insufficient to

civilly commit a person under the Adam Walsh Act, Blackledge had no contact offenses in the 16 months he lived in the community between periods of incarceration, and Blackledge's lack of infractions while incarcerated showed he possessed volitional control (JA pp 243-45). The district court took the matter under advisement at the close of the bench trial (JA p 245).

On 10 August 2012 the district court reconvened and read its findings and conclusions into the record (JA pp 248-85). The district court concluded by clear and convincing evidence that Blackledge was a sexually dangerous person under the Adam Walsh Act (JA pp 284-85). That same day the district court issued a written order incorporating its oral findings and conclusions and committing Blackledge to the custody of the United States Attorney General (JA p 300-01). Blackledge filed notice of appeal from this judgment on 23 April 2012 (JA pp 303-04).

# ARGUMENT

## I. THE DISTRICT COURT CLEARLY ERRED IN FINDING THAT BLACKLEDGE'S ATTORNEY HAD NOT ABANDONED HIM AND IT ABUSED ITS DISCRETION BY FAILING TO EQUITABLY TOLL THE DISCOVERY PERIOD DEADLINE TO ALLOW BLACKLEDGE TO SEEK THE APPOINTMENT OF AN ADDITIONAL EXPERT FORENSIC EXAMINER WHO COULD PROVIDE HIM FAVORABLE TESTIMONY AT HIS CIVIL COMMITMENT HEARING.

<u>Summary of Argument</u>

This case is on point with the circumstances that caused the reversal in

*Maples v. Thomas*, ___ U.S. ___, 132 S. Ct. 912, 181 L. Ed. 2d 807 (2012).  The

respondent's attorney abandoned him during a period in which an important

deadline was missed thus creating a procedural default from which the trial court

would not grant the respondent relief resulting in prejudice to the respondent.

Attorney Allen abandoned Blackledge between November 2011 and June 2012

thus failing to renew her motion for an additional expert forensic examiner during

that period.  As a result of Attorney Allen's abandonment, Blackledge failed to

produce a favorable expert forensic examination by the 22 December 2011

discovery deadline.  After the period of abandonment, the district court found that

Attorney Allen had not abandoned Blackledge and it denied Blackledge's

subsequent requests to extend the discovery deadline to obtain an additional expert

forensic examination.  The district court's denial was based on the scheduling

order for the case.  This reasoning was tantamount to a finding that Blackledge had

12

missed a deadline and was in procedural default and that the problem was caused by simple attorney negligence rather than abandonment.  Excusable neglect exists where a respondent is in procedural default due to his attorney's abandonment (as opposed to simple neglect).  The district court clearly erred by finding that Attorney Allen had not abandoned Blackledge and it abused its discretion by failing to extend the discovery deadline to allow Blackledge to obtain an additional expert forensic examination.

Standard of Review

Whether Attorney Allen abandoned Blackledge is a factual determination. This Court reviews the district court's factual findings under a "clearly erroneous standard."  *United States v. Stevenson*, 396 F.3d 538, 541-42 (4th Cir. 2005).  A factual finding is "clearly erroneous" when the reviewing court is "left with the definite and firm conviction that a mistake has been committed."  *Id. at* 542 (citing *Anderson v. Bessemer City*, 470 U.S. 564, 573, 84 L. Ed. 2d 518, 105 S. Ct. 1504 (1985) (internal quotation marks and citation omitted)).

Blackledge's request for relief for missing the discovery deadline is called "equitable tolling."  This Court reviews the equitable tolling claim for abuse of discretion.  *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000) ("[equitable tolling is a] discretionary doctrine that turns on the facts and circumstances of a particular case" (quoting *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999)).  A

13

district court abuses its discretion when its decision is "guided by erroneous legal principles or rest[ed] upon a clearly erroneous factual finding." *United States v. Johnson*, 617 F.3d 286, 292 (4th Cir. 2010) (quoting *Brown v. Nucor Corp.*, 576 F.3d 149, 161 (4th Cir. 2009)) (internal quotation marks omitted).

Discussion

Abandonment

On 11 October 2011 Attorney Allen filed a motion for appointment of an expert forensic examiner named Dr. Plaud and a motion for extension of time to complete discovery (JA pp 23-63). The next pleading filed by anyone from the Federal Public Defender's Office came 187 days later--on 17 April 2012--when attorneys Shea and Graves filed notices of appearance (JA pp 70-71). A month after that, 16 May 2012, Attorney Shea filed an unopposed motion to continue the bench trial (JA pp 72-74). A month after that, 14 June 2012, Attorney Allen filed a sealed renewed motion for appointment of Dr. Plaud (JA pp 305-08). In total, 245 days passed between Attorney Allen's two motions for appointment of Dr. Plaud.

All of these facts show that Attorney Allen had failed to act as Blackledge's agent in any meaningful way in the months between November 2011 and June 2012. At the 18 July 2012 hearing on Attorney Allen's motion to withdraw, Blackledge said the following: "I was just in a waiting mode waiting for the [expert forensic examiner] to show up and, I mean, I get up every morning and

14

shave and shower and get ready for the interview and it never materialized." (JA p 107, lines 8-11)  This statement is further evidence that Attorney Allen did not visit or communicate with Blackledge during that six-month period.

At the start of the bench trial on 2 August 2012 the trial court found that Attorney Allen had not abandoned Blackledge (JA p 162).  The district court judge specifically noted as follows:  "Mr. Blackledge has not been abandoned like the lawyer did in *Maples* itself.  The federal public defender has remained in the case, has prepared for this hearing." (JA p 161, lines 6-9).  This was clear error.  The fact that Attorney Allen did not abandon Blackledge for the entirety of the case does not rule out that she abandoned him during a critical juncture of the case.  The lawyers in *Maples* did not abandon their client for the entirety of that case. *Maples*, 132 S. Ct. at 925, n. 8.

The evidence showed that Attorney Allen failed to serve as Blackledge's agent in any meaningful sense of that word between 11 October 2011 and 17 April 2012.  She filed absolutely no pleadings on his behalf during that period.  She failed to communicate with him during that period.  She missed an important deadline during that period.  Blackledge fully expected Attorney Allen to act on his behalf during that period, especially with respect to the discovery deadline.  This Court must be "left with the definite and firm conviction that" the district court clearly erred in finding that Attorney Allen had not abandoned Blackledge.

15

Equitable Tolling

Blackledge requested what is referred to as "equitable tolling." Equitable

tolling applies only when a petitioner can demonstrate that he has been pursuing

his rights diligently and some extraordinary circumstance prevented his timely

filing. *See Holland v. Florida,* 560 U. S. ___, 130 S. Ct. 2549, 2563, 177 L. Ed. 2d

130 (2010). Whether equitable tolling applies depends on the facts and

circumstances of each case. *See Harris*, 209 F.3d at 329-30. Generally,

ineffective assistance of counsel does not warrant equitable tolling. *Beery v. Ault*,

312 F.3d 948, 951 (8th Cir. 2002) (citing *Harris*, 209 F.3d at 331).

"A markedly different situation is presented, however, when an attorney

abandons his client without notice, and thereby occasions the default." *Maples*, 32

S. Ct. at 922. The Supreme Court homed in on the difference between attorney

negligence and abandonment by noting a quote from Justice Alito's concurring

opinion in *Holland*: "Common sense dictates that a litigant cannot be held

constructively responsible for the conduct of an attorney who is not operating as

his agent in any meaningful sense of that word." *Holland,* 130 S. Ct. at 2568.

Like the case *sub judice*, the facts of *Maples* concerned a missed deadline.

In *Maples*, an Alabama petitioner's state collateral appeal was prepared by two

out-of-state attorneys who, while the case was pending, left their firm without

notifying petitioner or the Alabama court. *Id.* at 918-919. As a result, the

16

petitioner never received notice of the denial of his collateral appeal and he was

unaware that the time for appealing that decision had been triggered. *See id.* at

919-920. The petitioner subsequently failed to file a timely appeal and later,

during federal habeas review, he was determined to have procedurally defaulted

the claims presented in his collateral appeal. *Id.* at 921-922. The Supreme Court

reviewed the matter as a missed deadline issue and considered whether the

petitioner had shown cause to excuse the missed deadline. *Id.* The Supreme Court

determined that the petitioner had shown "cause . . . to excuse the procedural

default into which [the petitioner] was trapped when counsel of record abandoned

him without a word of warning of his federal habeas claims." *Id.* at 924.

Likewise here, Attorney Allen abandoned Blackledge's case at a critical

juncture and missed a deadline thus creating a procedural default. No attorney

acted on behalf of Blackledge whatsoever between 4 November 2011, when the

district court denied Blackledge's first request for appointment of Dr. Plaud, and

17 April 2012, when Attorneys Shea and Graves made notices of appearance.

During this period, the district court set a very meaningful deadline: the discovery

period would end on 22 December 2011 (JA p 6, DE 34). Essentially, in

November 2011 the district court had given Blackledge until 22 December 2011 to

re-request appointment of Dr. Plaud (JA p 6, DE 34). Blackledge patiently waited

for Attorney Allen to do this but she did not act until 14 June 2012, thus missing

17

the 22 December 2011 discovery deadline, by six months.  The only reason

Attorney Allen gave for missing the deadline was that she thought she had more

time to re-request Dr. Plaud's appointment (JA p 108).

When Attorney Allen finally re-requested appointment of Dr. Plaud on 14

June 2012, the magistrate judge denied the request reasoning that Blackledge had

failed to show good cause to modify the district court's schedule for conducting the

bench trial (JA pp 312-15).  At the start of the bench trial on 2 August 2012

Attorney Allen requested a bifurcated hearing that would allow Blackledge to

present his evidence at a later date (JA p 162).  Blackledge asserts that his 14 June

2012 motion and his request for trial bifurcation were implicit requests to extend

the discovery deadline and not be held in procedural default.  The district court

judge found the bifurcation request to be inconsistent with the scheduling order

and denied it (JA pp 163-64).  The district court judge specifically said as follows:

"The scheduling orders are not idle pieces of paper.  [. . .]  I think it is inconsistent

with the scheduling order and the public interest.  So that motion is denied." (T p

163)

Blackledge's case is thus very similar to the *Maples* case.  Like *Maples*,

Blackledge's attorney abandoned him at a critical juncture of his case and missed

an important deadline during that period.  Blackledge asked for relief from the

missed deadline but the district court concluded that Blackledge was in procedural

18

default.  Characterizing it as procedural default is correct because the district court twice relied on the scheduling order to deny Blackledge's implicit requests to extend the discovery period.  This was reversible error.  *Maples*, 132 S. Ct. at 927.

Conclusion

The law requires "that any resort to equity must be reserved for those rare instances where–-due to circumstances external to the own party's conduct–-it would be unconscionable to enforce the limitation period against the party and gross injustice would result."  Harris, 209 F.3d at 330.  Equity presents a "resistance to rigid rules."  Holland, 130 S. Ct. at 2563.  Attorney Allen failed to satisfy basic professional standards of care to Blackledge's detriment.  The district court's denial of Blackledge's implicit requests to extend the discovery deadline also rested upon a clearly erroneous factual finding:  that Attorney Allen had not abandoned Blackledge.  Thus, the district court abused its discretion when it refused to grant Blackledge equitable tolling in this circumstance.  Blackledge respectfully asks this Court to vacate and remand on this issue.

**II. THE DISTRICT COURT ABUSED ITS DISCRETION BY FAILING TO ALLOW BLACKLEDGE'S TRIAL ATTORNEY TO WITHDRAW AFTER SHE DEMONSTRATED A SIGNIFICANT CONFLICT OF INTEREST THAT RENDERED HER LOYALTY TO BLACKLEDGE UNCLEAR.**

Summary of Argument

In an Adam Walsh Act case a respondent has the statutory right to counsel.  Presumably, this includes the right to the effective assistance of counsel, which

19

further includes counsel free of conflicts of interest.  A significant conflict of interest arose for Attorney Allen when she abandoned Blackledge and then missed the 22 December 2011 discovery deadline.  She demonstrated this conflict of interest when she cited *Maples* in her appeal to the district court judge of the magistrate judge's decision to deny her motion to withdraw (JA p 119).  As the Supreme Court noted in *Maples*:  an attorney's abandonment coupled with a missed deadline creates a "significant conflict of interest" for the attorney. *Maples*, 132 S. Ct. at 925, n. 8.  The attorney is presented with the dilemma of zealously advocating for her client while simultaneously protecting against potential damage to her own reputation.  *Id.*  As such, Blackledge was represented by a court-appointed attorney who labored under a significant conflict of interest. The district court's refusal to allow Attorney Allen to withdraw forced Blackledge to proceed with the ineffective assistance of trial counsel.

Standard of Review

Blackledge supported Attorney Allen's motion to withdraw.  Therefore, Attorney Allen's motion to withdraw can be viewed as being equivalent to a motion to substitute counsel.  The denial of a motion for substitution of counsel is reviewed for abuse of discretion.  *United States v. Corporan-Cuevas,* 35 F.3d 953, 956 (4th Cir. 1994).

A district court abuses its discretion when its decision is "guided by erroneous legal principles or rest[ed] upon a clearly erroneous factual finding." *Johnson*, 617 F.3d at 292.

Discussion

There are two sources of error here: (1) Attorney Allen's conflict of interest precluded her from continuing to represent Blackledge and (2) the district court presented Blackledge with the untenable decision of choosing between representing himself and being represented by an attorney who labored under a significant conflict of interest.

Conflict of Interest

"[An Adam Walsh Act] hearing shall be conducted pursuant to the provisions of [18 U.S.C. § 4247]." 18 U.S.C. § 4248(c). At such a hearing the respondent <u>shall</u> be represented by counsel. 18 U.S.C. § 4247(d) (emphasis added). Blackledge asserts that the right to counsel, whether it is constitutional or statutory, and especially where it derives under the CJA (18 U.S.C. § 3006A), necessarily includes the right to the <u>effective</u> assistance of counsel. A necessary corollary to the right to the effective assistance of counsel is the right to representation free from conflicts of interest. *See, e.g., Wood v. Georgia*, 450 U.S. 261, 273, 101 S. Ct. 1097, 67 L. Ed. 2d 220 (1981) (reversed when it was unclear

if the attorney represented the defendants' interests or the interests of the defendants' employer who had hired the attorney).

Claims of ineffective assistance of counsel due to attorney conflict of interest are governed by the familiar two-part standard of *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Under that standard, the defendant must show first that his counsel's performance fell below the level expected of a reasonably competent attorney. *Id.* at 687. Second, in the usual case the defendant must establish prejudice by showing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

However, the courts have developed a slightly different analysis where a defendant bases a claim of ineffective assistance on an allegation that the attorney in question was laboring under an actual conflict of interest. The performance element of the *Strickland* analysis is satisfied when the defendant establishes that his counsel was involved in an actual conflict of interest, as "the effective performance of counsel requires meaningful compliance with the duty of loyalty and the duty to avoid conflicts of interest, and a breach of these basic duties can lead to ineffective representation." *United States v. Tatum*, 943 F.2d 370, 375 (4th Cir. 1991); *see also Strickland*, 466 U.S. at 692. As for the prejudice requirement, "when counsel for a defendant in a criminal case has an actual conflict of interest

22

when representing the defendant and the conflict adversely affects counsel's performance in the defense of the defendant, prejudice to the defense is presumed," thus entitling the defendant to a new trial or sentencing. *Tatum*, 943 F.2d at 375; *see also Strickland*, 466 U.S. at 692; *Cuyler v. Sullivan*, 446 U.S. 335, 348-50, 100 S. Ct. 1708, 64 L. Ed. 2d 333 (1980). It has even been said that such an actual conflict of interest may never be harmless error. *See Glasser v. United States*, 315 U.S. 60, 76, 62 S. Ct. 457, 86 L. Ed. 680 (1942).

Blackledge asserts that these principles apply to his case even though it is civil rather than criminal. Congress has mandated that he have counsel in an Adam Walsh Act proceeding. 18 U.S.C. § 4247(d). Further, if a respondent in an Adam Walsh Act case cannot afford counsel, the district court shall appoint counsel pursuant to the CJA (18 U.S.C. § 3006A). *Id.* Congress passed the CJA in 1964 to ensure that "defendants who are financially unable to afford trial services necessary to an adequate defense are provided them in accordance with the Sixth Amendment." *United States v. Barcelon*, 833 F.2d 894, 896 (10th Cir. 1987); *see also Heath v. U.S. Parole Comm'n*, 788 F.2d 85, 88 (2d Cir. 1986) (same). While Blackledge cannot claim a <u>constitutional</u> right to the effective assistance of counsel, it would be inappropriate to infer that Congress intended for court-appointed counsel in a civil case that could result in indefinite incarceration to be any less competent than counsel appointed in criminal cases.

23

Here, Attorney Allen demonstrated an actual conflict of interest.  As argued above, this case was on point with *Maples* in that Attorney Allen abandoned Blackledge during a period in which an important deadline was missed thus creating a procedural default from which the trial court would not grant Blackledge relief to his detriment in that he was unable to obtain a favorable expert forensic examination to show that he should not be civilly committed.  These circumstances, nearly identical to the circumstance in *Maples*, demonstrated a "significant conflict of interest" for Attorney Allen.  *Maples*, 132 S. Ct. at 925, n. 8.  In essence, Attorney Allen's error forced her to serve two masters with conflicting interests:  (1) representation of Blackledge's interests in his civil commitment proceeding and (2) representation of her own professional reputation and law license.  *Id.*

At the hearing in front of the magistrate judge on Attorney Allen's motion to withdraw, Attorney Graves said that Dr. Plaud had preliminarily indicated he could provide favorable testimony for Blackledge (JA p 107).  Attorney Allen subsequently said that Dr. Plaud had not unequivocally said he would find that Blackledge did not meet the Adam Walsh Act criteria but that he would look at it and that it was possible he might so conclude (JA pp 109).  One has to wonder if Attorney Allen's characterization of what Dr. Plaud said was warped by her sense of duty to her own reputation after having twice failed to properly secure the

24

appointment of Dr. Plaud.  Blackledge asserts that this shows that Attorney Allen's conflict actually affected the adequacy of her representation.  Attorney Allen should not have been attempting to advocate for Blackledge after her abandonment of his case that caused a missed deadline and subsequent procedural default.  *Id.* As such, Blackledge need not demonstrate prejudice.  *Cuyler*, 446 U.S. at 350.

Proceeding *Pro Se*

The district court compounded the error while questioning Blackledge about his representation (JA p 151-52).  The district court judge asked the following:  "If I let [Attorney Allen] withdraw, that doesn't mean you get a lawyer.  There would be a separate issue about whether to continue the case, whether you would be prepared to go *pro se*.  What do you have to say about that?" (JA p 152, lines 7-12) Blackledge replied that he did not want to represent himself (JA p 152).  The district court judge then asked:  "So if given that choice, you would proceed with Ms. Allen?" (JA p 152, lines 18-19).  Blackledge replied:  "If forced to." (JA p 152, line 20)  Later, when stating his reasons for denying Attorney Allen's motion to withdraw, the district court judge said he was basing his decision, in part, on Blackledge's acknowledgment that he would rather proceed with Attorney Allen than represent himself (JA pp 161-62).

Blackledge first notes that the district court judge was not statutorily authorized to "allow" (or "force," however one wants to characterize it) Blackledge

to represent himself. "At a hearing ordered pursuant to [18 U.S.C. § 4247] the person whose mental condition is the subject of the hearing <u>shall</u> be represented by counsel and, if he is financially unable to obtain adequate representation, counsel shall be appointed for him pursuant to [18 U.S.C. § 3006A]." 18 U.S.C. § 4247(d) (emphasis added). The Supreme Court has observed that "the mandatory 'shall' . . . normally creates an obligation impervious to judicial discretion." *Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35, 118 S. Ct. 956, 140 L. Ed. 2d 62 (1998) (citing *Anderson v. Yungkau*, 329 U.S. 482, 485, 67 S. Ct. 428, 91 L. Ed. 436 (1947).

Thus, it was inappropriate for the district court judge to suggest to Blackledge that he might have to represent himself if Attorney Allen were released. The district court was statutorily required to ensure that Blackledge was represented by competent counsel. Had the district court judge allowed/forced Blackledge to represent himself, he would have violated a statutory mandate, which would have caused reversal on appeal.

Second, the district court presented Blackledge with an untenable choice: either represent himself or proceed with an attorney who labored under an actual, significant conflict of interest. In essence, it really was not a choice at all. Forcing Blackledge to proceed with ineffective assistance of counsel was tantamount to forcing him to proceed with no counsel. Thus, the district court effectively denied

26

Blackledge his statutory right to the <u>effective</u> assistance of counsel.  Using Blackledge's acknowledgment that he would rather proceed with Attorney Allen's conflicted representation rather than represent himself was toothless given that neither choice is statutorily authorized and both choices deny Blackledge the effective assistance of counsel.

<u>Conclusion</u>

Attorney Allen's interest in protecting her reputation conflicted with Blackledge's argument that Attorney Allen had abandoned him and caused the procedural default of missing the discovery deadline.  In essence, Attorney Allen's inactions contributed to Blackledge's inability to properly defend himself in the civil commitment proceeding.  And yet the district court still forced Blackledge to proceed with her services in spite of the problems she had created and in spite of her need to defend herself against any coming claims Blackledge might levy against her.  Presenting the situation to Blackledge as a choice between counsel laboring under a significant conflict of interest or no counsel at all and then relying on Blackledge's choice to deny Attorney Allen's motion to withdraw compounded the error and prejudiced Blackledge because neither choice was statutorily authorized.  For the reasons he has given herein, Blackledge respectfully asks the Court to vacate and remand for a new hearing with competent counsel free of any conflicts of interests.

## III. THE DISTRICT COURT ABUSED ITS DISCRETION AND/OR REVERSIBLY ERRRED BY REFUSING TO GRANT BLACKLEDGE'S MOTION FOR AN ADDITIONAL EXPERT FORENSIC EXAMINER IN HIS CIVIL COMMITMENT HEARING BECAUSE IT USED AN ERRONEOUS LEGAL STANDARD IN MAKING ITS DECISION.

<u>Summary of Argument</u>

At Attorney Allen's motion to withdraw in front of the magistrate judge, Blackledge complained about Attorney Allen's failure to procure appointment of an additional expert forensic examiner who could provide him favorable testimony (JA pp 106-07).  In addition to denying the motions because they would disrupt the scheduling order, the magistrate judge replied thusly:  "no showing was made that another examination would produce a different result." (JA p 107, lines 15-16) This statement showed that the district court abused its discretion because it used an erroneous standard in ruling on the motion.  The district court failed to consider whether the ultimate issue in the case required expert testimony for its resolution <u>and</u> whether Blackledge's position could be fully developed without expert assistance.

<u>Standard of Review</u>

Normally, this Court reviews a district court's decision regarding the necessity of expert services for abuse of discretion.  *United States v. Hartsell*, 127 F.3d 343, 349 (4th Cir. 1997).  A district court abuses its discretion when its decision is "guided by erroneous legal principles or rest[ed] upon a clearly

erroneous factual finding." *Johnson*, 617 F.3d 286, 292.  However, Blackledge is

alleging that the district court denied his request for expert assistance using an

incorrect legal standard.  Under such circumstances, a *de novo* review is triggered

because the Court must make an independent examination of the record to

determine if expert testimony was required to reach a resolution in this case <u>and</u>

whether Blackledge's position could have been fully developed without

professional assistance.  *Williams v. Martin*, 618 F.2d 1021, 1026 (4th Cir. 1980).

Under a *de novo* review, the reviewing court accords no deference to the lower

court, but rather determines for itself if the lower court should be reversed on the

ground that its decision was contrary to law.  *See Harman v. Apfel*, 211 F.3d 1172,

1175-76 (9th Cir. 2000).  Blackledge asserts that if the Court concludes legal error

based on an application of an incorrect legal standard, it also necessarily concludes

an abuse of discretion (because the district court's decision is "guided by erroneous

legal principles").  *Johnson*, 617 F.3d 286, 292.

<u>Discussion</u>

At Attorney Allen's motion to withdraw in front of the magistrate judge,

Blackledge complained about Attorney Allen's failure to procure appointment of

Dr. Plaud (JA pp 106-07).  In addition to denying the motions because they would

disrupt the scheduling order, the magistrate judge also replied thusly:  "no showing

was made that another examination would produce a different result." (JA p 107,

lines 15-16)  At the contested bench trial, the district court judge remarked as follows about the motions for Dr. Plaud:  "Mr. Blackledge offered no basis upon which to expect that Dr. Plaud might reach a different conclusion than Dr. Campbell."  (JA pp 155, lines 20-22)

It is clear from these statements that the district court's decisions denying Blackledge's motions for an additional expert forensic examiner were based on the fact that Blackledge failed to show that Dr. Plaud would produce a result different from Dr. Campbell.  Ironically, the district court did not require Blackledge to show that Dr. Campbell would produce a different result than the Government's experts had produced when Blackledge had previously requested Dr. Campbell's services.  Thus, the district court seems to have used different standards for assessing Blackledge's two separate requests for experts.

Nonetheless, the district court's reasoning in denying Blackledge's motions for appointment of Dr. Plaud was an abuse of discretion and/or reversible error. When considering a request for funds for an expert witness at Government expense, the district court must consider whether the ultimate issue in the case requires expert testimony for its resolution and whether the respondent's position can be fully developed without professional assistance. *Jacobs v. United States*, 350 F.2d 571, 573 (4th Cir. 1965).  Here, the magistrate judge's order denying Blackledge's request for appointment of Dr. Plaud includes language that

addresses these issues (JA pp 314-15).  However, Blackledge submits that the

district court misconstrued the analysis.  The district court's reasoning was that it

needed but one expert to determine the issue and if that expert happened to opine

that Blackledge should be committed, that is simply too bad for Blackledge (JA pp

314-15).  The question, however, is not simply a matter of whether the district

court needed an expert to make a decision.  The district court was also required to

determine if Blackledge could defend himself without expert assistance.  *Id.*  It

failed to do so.

As such, this Court must make an independent examination of the record to

determine if expert testimony was required to reach a resolution in this case and

whether Blackledge's position could have been fully developed without

professional assistance.  *Williams*, 618 F.2d at 1026.

Was expert testimony required?

It should be clear to the Court that resolution of the issues in this case

required expert testimony.  Expert testimony is statutorily authorized in these

cases.  18 U.S.C. § 4248(b) (the district court may order that a psychiatric exam be

conducted).  One of the necessary elements for civil commitment under the Adam

Walsh Act is that the respondent suffers from a "mental illness, abnormality, or

disorder[.]"  18 U.S.C. § 4247(a)(6).  *See also United States v. Hall*, 664 F.3d 456,

463 (4th Cir. 2012) ("Whether [an] individual is mentally ill and dangerous to

either himself or others and is in need of confined therapy turns on the meaning of the facts which must be interpreted by expert[s].")  Further, a quick perusal of the case law on Adam Walsh Act cases reveals that experts are always used in these cases.  Appellate counsel for Blackledge was unable to find a case that did <u>not</u> involve the classic "battle of the experts."

Additionally, the Government's strategy was to use two experts to prove that Blackledge should be civilly committed.  The district court judge relied heavily on all three experts who provided opinions in the case to conclude that Blackledge should be civilly committed (T 8/10/12).  At the start of the bench trial the district court judge commented as follows: "I have had a case where I completely discounted an expert who testified on behalf of a respondent in one of these cases but I found that the Government's experts didn't persuade me that they met the burden of proof and the person was ordered released." (JA p 150, lines 16-21) This statement shows that the district court had previously still relied on expert testimony even when ruling in favor of a respondent.

Blackledge asserts that expert testimony was most certainly needed in his case.  He asserts that had he the financial means, he most certainly would have hired Dr. Plaud.  This Court made it clear in *Jacobs* that the Government's obligation to provide an indigent defendant with expert services when necessary was predicated on the Equal Protection Clause.  *Jacobs*, 350 F.2d at 573 (citing

32

*Griffin v. Illinois*, 351 U.S. 12, 76 S. Ct. 585, 100 L. Ed. 891 (1956)) ("The Supreme Court has unmistakably held that in criminal proceedings it will not tolerate discrimination between indigents and those who possess the means to protect their rights.")

Could Blackledge defend without an expert?

The only way Blackledge could have avoided involuntary civil commitment without expert testimony aiding him would have been to convince the district court that the Government, through its experts, had failed to prove the necessary elements for civil commitment under the Adam Walsh Act. In fact, that was the very strategy the district court forced upon Blackledge when it denied his motions for appointment of Dr. Plaud. The elements for involuntary civil commitment of a respondent under the Adam Walsh Act are as follows: (1) "has engaged or attempted to engage in . . . sexually violent conduct or child molestation" in the past, 18 U.S.C. § 4247(a)(5); (2) currently "suffers from a serious mental illness, abnormality, or disorder;" and (3) as a result of the illness, abnormality, or disorder, "would have serious difficulty in refraining from . . . sexually violent conduct or child molestation if released," 18 U.S.C. § 4247(a)(6). *See United States v. Comstock*, 627 F.3d 513, 515-16 (4th Cir. 2010).

Given that Blackledge had been previously convicted of sexual violence and child molestation offenses, the district court's denial of his request for Dr. Plaud's

33

services limited his defense strategy to showing that he would be able to refrain from committing future sexual violence or child molestation acts. But Blackledge had no experts to help him in that regard and it seems highly probable that had he testified, his testimony would have failed to persuade the district court judge that he could refrain from further acts of sexual violence or child molestation. In the end, the district court relied heavily on the Government's experts to conclude the existence of the third element.

It should also be noted that the third element, inability to refrain from future sexual violence or child molestation acts, is inextricably intertwined with the second element of suffering from a mental illness, abnormality, or disorder. 18 U.S.C. § 4247(a)(6) ("the person suffers from a serious mental illness, abnormality, or disorder as a result of which he would have serious difficulty refraining from sexually violent conduct"). Thus, it appears that expert testimony is necessary to prove or disprove this third element for civil commitment under the Adam Walsh Act. In essence, the district court completely denied Blackledge a defense when it refused to allow him the opportunity to pursue an additional expert forensic examiner. Blackledge respectfully requests that the Court vacate and remand on this issue.

## CONCLUSION

Based on the arguments and authorities cited herein, Blackledge respectfully asks this Court to vacate the district court's involuntary civil commitment judgment under the Adam Walsh Act and remand this case for proceedings consistent with Blackledge's rights under that Act and the case law interpreting that Act.

## ORAL ARGUMENT

Blackledge requests oral argument.

/s/Richard Croutharmel
Richard Croutharmel
Attorney at Law
303-200 Blake Street, Suite 211
Raleigh, NC 27601
919-755-1113
Fax: 919-755-1162
rcroutharmel@earthlink.net
N.C. State Bar No. 29165
Attorney for Respondent-Appellant

## UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

No. 12-7419          **Caption:** US v. Thomas Blackledge

### CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) or 32(a)
Certificate of Compliance With Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

1.     This brief complies with the  type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

*[Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 14,000 words or 1,300 lines; Appellee's Opening/Response Brief may not exceed 16,500 words or 1,500 lines; any Reply or Amicus Brief may not exceed 7,000 words or 650 lines; line count may be used only with monospaced type]*

☑     this brief contains _____8,018_____ [*state the number of*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

☐     this brief uses a monospaced typeface and contains _____ [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

*[14-point font must be used with proportional typeface, such as Times New Roman or CG Times; 12-point font must be used with monospaced typeface, such as Courier or Courier New]*

☑     this brief has been prepared in a proportionally spaced typeface using MS Word 2010 [*state name and version of word processing program*] in Times New Roman, 14 point [*state font size and name of the type style*]; *or*

☐     this brief has been prepared in a monospaced typeface using _____ [*state name and version of word processing program*] with _____ [*state number of characters per inch and name of type style*].

(s) Richard Croutharmel

Attorney for Appellant

Dated: 04/24/2013

Rev. 03/03/11

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 24th, 2013, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

G. NORMAN ACKER, III
EDWARD D. GRAY
RUDOLF A. RENFER, JR.
OFFICE OF THE UNITED STATES ATTORNEY
Federal Building, Suite 800
310 New Bern Avenue
Raleigh, NC 27601-1461
Phone:   919-856-4530


*/s/ Catherine B. Simpson*
Counsel Press LLC
1011 East Main Street
Suite LL-50
Richmond, Virginia 23219
(804) 648-3664


Filing and service were performed by direction of counsel